# KENNETH A. PAUL
ATTORNEY AT LAW

140 BROADWAY - SUITE 4610
NEW YORK, N.Y. 10005
TELEPHONE: (212) 587-8000
FAX: (212) 858-7750

kpaul@kennethpaulesq.com

February 17, 2020

**Via ECF and Regular Mail**
Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    United States v. Adrienne Roberts
                   18 Cr. 528 (JMF)

Dear Judge Furman:

        I represent Ms. Adrienne Roberts in the above-referenced matter. Ms. Roberts's case is presently scheduled for sentencing on March 2, 2020. Please accept this letter as a sentencing submission on behalf of Ms. Roberts who has received and reviewed both her Presentence Investigation Report ("PSR") and her revised PSR. We have set forth and incorporated any factual objections to the PSR in this submission.

        On August 27, 2019, Adrienne Roberts pled guilty as charged to Count 1 before Your Honor. She has admitted to agreeing with others to violate the Travel Act, 18 U.S.C. §1952(a), in violation of Title 18 U.S.C. §371, in that she allowed her apartment to be used for prostitution in return for money and therefore aided in the promotion of prostitution. She became aware that one of the girls using her apartment was a minor.

        The Probation Department has determined Ms. Roberts's total offense level to be 29 and that she is in criminal history category IV. This calculation differs from the plea agreement between the parties in that the agreement found that Ms. Roberts was in criminal history category III and, with certain added enhancements and acceptance of responsibility, her advisory guidelines range was 108 to 135 months' imprisonment. (PSR, ¶¶28-68). This change in her criminal history category would increase her advisory guidelines range to 121 to 151 months' imprisonment. However, pursuant to §5G1.1(a) of the U.S.S.G., because the statutory maximum term of imprisonment for the offense of conviction is less than the minimum of the applicable Guidelines range, her Guidelines is the statutorily authorized maximum sentence of 60 months.

It should also be noted that in reviewing Ms. Roberts's criminal history almost every arrest she has ever had, with very few exceptions, has involved the possession of drugs. Many of these arrests were for misdemeanor offenses and often the possession of marijuana.

As this Court is very well aware, the Sentencing Guidelines are advisory, post *United States v. Booker*, 125 S. Ct. 738 (2005), and are but one of five factors to be considered in determining a sentence. District courts are nevertheless directed to determine the applicable guidelines range and consider it along with all of the factors listed in 18 U.S.C. §3553(a). *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). The Supreme Court's opinion in *Gall v. United States*, 128 S. Ct. 586 (2007), "rejected an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and further "rejected the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." According to the *Gall* case, the Sentencing Guidelines provide a sentencing court with a "starting point and the initial benchmark". The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. The Court of Appeals cannot overrule a district court's sentence that is based upon the consideration of the §3553(a) factors along with a reasonable and rationale determination in light of the record in the particular case. The Supreme Court in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), rejected an attempt to give special weight to the Sentencing Guidelines. These cases clearly state that the district courts are only required to look to the advisory guidelines as they should also look to all the other factors as set forth in 18 U.S.C. §3553(a).

Attached hereto are letters of support for Ms. Roberts from a few of her friends. These letters attest to the fact that she is fundamentally a positive person. This Court should also be aware that while Ms. Roberts's family are all supportive of her she nevertheless refused to ask them to write letters to the Court on her behalf because she is too embarrassed for her actions and did not want to bother them with her problems.

The PSR has misstated many of the facts surrounding my client's troubled upbringing and history. Her father was an alcoholic who attempted to be clean for twenty-five years before he died of cancer in 1979. (PSR, ¶72). Ms. Roberts learned that he was not her true biological father when she was 22 years old and this proved to be very distressful and emotionally difficult for her. (PSR, ¶75).

Ms. Roberts was only 17 years old when she was raped and this sexual assault produced her daughter, Ebony, who to this date is not aware of the circumstances that led to her birth. Contrary to the PSR, the daughter is employed with the New York City Housing Authority. (PSR, ¶76). Ebony Roberts was raised by both Adrienne and her mother and never placed in foster care. My client and her mother also raised her other two children, Brandon and Erica, until the death of Adrienne's mother in 1991. At that time all of the children, including Dorian who was born after her mother's death, were placed in foster care and the three children were later adopted by the foster father, Herbert Drummond.

My client states that ¶75 of the PSR is inaccurate. I attended her PSR interview and she never stated what is set forth in this paragraph. Consequently, ¶75 should be redacted from her PSR.

Ms. Roberts acknowledges that she needs drug counseling. As noted in the PSR, she has a history of both alcohol and drug abuse starting when she was 17 years old. Many of her previous arrests were directly related to her drug addiction. Recognizing that she needed help, she voluntarily entered an 8-day detox program in 2014, called "Medical Arts" located in Queens. She was then referred to Daytop Village in Rhinebeck, N.Y. for 28 days of counseling and thereafter referred to "Bridge Back to Life" located at 45 Remsen St. in Brooklyn. This was an outpatient program that she attended for one year in 2015. (PSR, ¶¶84-86).

While the PSR states that Ms. Roberts was unemployed from 1987 through 2015, prior to 1987 she was employed. From 1982 to 1987, she worked for "Citywide Security" as an armed security guard. She also worked as a security guard for three years at "South Street Seaport Security". In recent years, starting in 2015, she worked off the books for her cousin on the "Brooklyn Organic Truck". (PSR, ¶¶89-90).

In 1997, Ms. Roberts was diagnosed with the human immunodeficiency virus (HIV). (PSR, ¶82). This condition has required her to be on a strict regimen of medications to combat the disease. For months after her arrest for the instant offense, my client did not receive proper medications or attention at MCC for her condition which proved to be extremely difficult for her.

It is not surprising to learn that, in addition to the lack of medical attention that my client was in need of for two months after she arrived at MCC, the conditions she and other female inmates have had to endure have been inhumane. Rather than discussing in detail the terribly unhealthy environment at MCC that Ms. Roberts and others have had to live through, I have enclosed a memorandum from

Honorable Jesse M. Furman
February 17, 2020
Page Four

Ms. Deirdre von Dornum of the Federal Defenders office, EDNY, who conducted a visit at MCC in May of 2019. This memorandum provides Your Honor with a look into what the housing for Ms. Roberts has been like during these past 15 months of confinement. I would respectfully request that these abhorrent living conditions be one of the many factors this Court considers when evaluating whether a significant variance from my client's Guidelines should be applied.

Throughout the difficult time Ms. Roberts has been incarcerated at MCC, she nevertheless has managed not to utilize her time constructively. Though little is offered at MCC in way counseling and educational programs, my client has managed to complete many such group programs. Enclosed are several certificates of achievement by Ms. Roberts as well as a work performance rating from her job at commissary.

A non-guideline sentence best supports the sentencing Section 3553(a) of title 18. This section provides that "[t]he court shall in every case impose a sentence sufficient, but not greater than necessary to comply with the purposes set out in paragraph (2) of this subsection." 18 U.S.C. §3553(a). This command, known as the "parsimony clause," defines the scope of a sentencing court's "overarching duty." *Pepper v. United States*, 131 S. Ct. 1229, 1243 (2011). Among the factors to be considered under § 3553(a) are (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from future crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training[.]" 18 U.S.C. §3553(a). As the Supreme Court reaffirmed in *Pepper v. United States*, 131 S. Ct. 1229 (2011), a sentencing judge should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id. at 1240 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996).

In evaluating what an appropriate sentence for Adrienne Roberts would be, it should be emphasized the role she played in this offense. Unlike some of her co-defendants, Ms. Roberts never recruited or solicited anyone to be a prostitute. What she did, and has fully accepted responsibility for doing, is rented out a room in her apartment to Hubert Dupigny who then used this location as a bedroom for him to promote prostitution on behalf of young women who were minors. This room was rented for a total of three months and Ms. Roberts was compensated for doing so.

Honorable Jesse M. Furman
February 17, 2020
Page Five

      While probation recommends a Guideline sentence of 60 months incarceration, I would respectfully request that, after a full review of all the considerations as set forth in 18 U.S.C. §3553(a). as well as the limited role she played in this conspiracy, a sentence that is a variance and significantly lower from her Guidelines would be appropriate. Consequently, given all of the previously set forth reasons, a sentence of time served would be proper in this case.

      Thank you for your consideration.

Yours truly,

*[signature]*

Kenneth A. Paul

Cc:   Mary Elizabeth Bracewell
      Elinor Lynn Tarlow
      Jacob Gutwillig
      Assistant U.S. Attorneys    (Via ECF)