UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
             -v-                                                  :   18-CR-528-5 (JMF)
                                                                  :
ADRIENNE ROBERTS,                                                 :   MEMORANDUM OPINION
                                                                  :        AND ORDER
                      Defendant.                                  :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On April 2, 2020, the Defendant in this case, Adrienne Roberts, joined a growing chorus of defendants seeking compassionate release before a COVID-19 outbreak in their jail or prison puts their lives at risk. *See* ECF Nos. 287, 289 ("Def.'s Mem."). The Court shares her concerns. She is HIV-positive and, thus, may have a heightened risk of death in the event that she contracts COVID-19. And, as an inmate in the Metropolitan Correctional Center ("MCC"), a dense urban jail in which several inmates have tested positive for COVID-19, she faces a particularly grave danger of contracting the disease. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctr. for Disease Control, at 2 (Mar. 23, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.[1] Unfortunately, as compelling as Ms. Roberts's plea for help may be, the Court lacks authority to order the relief she seeks under the compassionate release statute,

---

[1] *See also* Ltr. from Sen. Richard J. Durbin et al. to Att'y Gen. William P. Barr et al., at 1 (Mar. 23, 2020), *available at* https://www.durbin.senate.gov/imo/media/doc/Letter.%20to%20DOJ%20and%20BOP%20on%20COVID-19%20and%20FSA%20provisions%20-%20final%20bipartisan%20text%20with%20signature%20blocks.pdf ("Conditions of confinement do not afford individuals the opportunity to take proactive steps to protect themselves, and prisons often create the ideal environment for the transmission of contagious disease.").

18 U.S.C. § 3582(c)(1)(A). Accordingly, and for the reasons stated below, her motion must be and is denied. At the same time, the Court urges the Bureau of Prisons ("BOP") to consider whether to grant Ms. Roberts temporary release pursuant to the furlough statute, 18 U.S.C. § 3622, as doing so may reduce her risks while ensuring that she serves her full sentence.

## COMPASSIONATE RELEASE

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, — F. Supp. 3d —, No. 02-CR-743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). Section 3582(c)(1)(A)(i), the compassionate release statute, is one such exception: It permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). By the statute's plain terms, however, a court may do so *only* "upon motion of the Director of the Bureau of Prisons" or "upon a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* No such motion has been made by the BOP Director, and Ms. Roberts concedes that she has not yet satisfied the requirements for bringing a motion on her own. *See* Def.'s Mem. 5. And although the Government has taken the view that the requirements can be waived, *see United States v. Gentille*, No. 19-CR-590-1 (KPF), ECF No. 31 (S.D.N.Y. Apr. 6, 2020) (noting the Government's position that the requirement is not jurisdictional, but is "mandatory unless waived by the Government"), and has exercised its discretion to waive them in other cases based on the threat of COVID-19, *see, e.g.*, *United States*

2

*v. Jasper*, No. 18-CR-390-18 (PAE), ECF No. 440 (S.D.N.Y. Apr. 6, 2020), it has — for whatever reason — elected not to do so here.

Ms. Roberts argues that the Court may disregard the express exhaustion requirement in light of COVID-19, even without a waiver by the Government. *See* Def.'s Mem. 5; ECF No. 292 ("Def.'s Supp."), at 2-6. Courts do have some flexibility to disregard exhaustion requirements when they are judicially imposed. *See Washington v. Barr*, 925 F.3d 109, 115-19 (2d Cir. 2019) (imposing an exhaustion requirement as a "prudential rule of judicial administration," subject to "broad" exceptions (internal quotation marks omitted)); *Maxwell v. N.Y. Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (summary order) ("Where a statute does not explicitly require exhaustion, we must exercise discretion and balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." (internal quotation marks omitted)). As the Supreme Court has emphasized, however, "a statutory exhaustion provision stands on different footing." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). In particular, statutory exhaustion requirements, such as those set forth in Section 3582(c), must be "strictly" enforced. *United States v. Monzon*, No. 99-CR-157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020); *United States v. Raia*, — F.3d —, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (describing the failure to exhaust as a "glaring roadblock foreclosing compassionate release at this point"). Moreover, in the case of Section 3582(c), the statute itself includes a limited futility-like exception, as it allows an inmate to seek relief "after . . . the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Given Congress's decision to mandate exhaustion and to specify a single alternative, the Court is not free to infer a general "unwritten 'special circumstances' exception." *See Ross*, 136 S. Ct. at 1856, 1862

3

(holding that the Prison Litigation Reform Act's "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account").

Nevertheless, out of an abundance of caution, the Court ordered the parties to submit supplemental briefing on potentially analogous statutory exhaustion requirements that have been held to be waivable or excusable by courts in certain circumstances. *See* ECF No. 290 (citing Title VII and the Social Security Act). For example, the Second Circuit has held that the provision of Title VII requiring a private plaintiff to first file a charge with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter "is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action that can be waived by the parties *or the court*." *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000) (emphasis added) (internal quotation marks and alterations omitted) (discussing 42 U.S.C. § 2000e-5(e), (f)); *Rein v. McCarthy*, — F. App'x —, No. 19-842-cv, 2020 WL 1042220, at *1 (2d Cir. Mar. 4, 2020) (summary order) (reaffirming this principle). Similarly, the Supreme Court recently held that exhaustion of the administrative review process set forth under the Social Security Act may be "excused by the courts," so long as the claims are "presented to the agency." *Smith v. Berryhill*, 139 S. Ct. 1765, 1773-74 (2019).

Upon review of the parties' submissions and further analysis, however, the Court concludes that neither statute suggests that Section 3582(c) permits a similar exception. The flexibility interpreted in the Social Security Act stems from its language providing for judicial review "after *any* final decision" by the agency, reflecting Congress's "intent to use [the] term ['final decision'] expansively." *Smith*, 139 S. Ct. at 1774 (emphasis added). The language of Section 3582(c)(1)(A), by contrast, is substantially more restrictive, requiring the defendant either to exhaust "*all* administrative rights to appeal" or to wait "30 days from the receipt of such

4

a request by the warden." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The Second Circuit's interpretation of Title VII, on the other hand, relied heavily on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), which concluded from the legislative history of Title VII that the requirement to file an EEOC charge was intended to "operate as a statute of limitations" and thus, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393-94; *see also Francis*, 235 F.3d at 767. Ms. Roberts has identified no comparable legislative history for Section 3582(c). In fact, the legislative history that Ms. Roberts cites indicates that Congress recognized the importance of expediting applications for compassionate release and still chose to require a thirty-day waiting period. *See* Def.'s Supp. 5. Under *Ross*, the Court must abide by Congress's choice, given Section 3582(c)'s clear command that the Court "may not" grant compassionate release except under the conditions Congress prescribed.[2]

---

[2] In general, the exhaustion requirement makes good sense. The BOP "is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *United States v. Russo*, No. 16-CR-441 (LJL), ECF No. 54, at 4 (S.D.N.Y. Apr. 3, 2020). At the same time, by allowing for judicial review after a lapse of thirty days, the statute itself "reflects congressional intent for the defendant to have the right to a meaningful and prompt *judicial* determination of whether he should be released." *Id.* Under normal circumstances, the thirty-day safeguard "functions as 'an accelerant to judicial review,' providing defendants with recourse to the courts after the lapse of an otherwise 'exceptionally quick' 30-day period." *United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *2-3 (S.D.N.Y. Apr. 6, 2020) (quoting *Russo*, ECF No. 54, at 5). But the present circumstances are anything but normal: In the last thirty days, the number of diagnosed cases of COVID-19 in New York State alone has grown from a handful to over 100,000. *See id.* In these circumstances, "30 days is anything but 'exceptionally quick' — indeed, each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *Id.* (quoting *Russo*, ECF No. 54, at 5). It follows that requiring a defendant to wait a full thirty days before filing a motion for compassionate release "may pervert congressional intent by transforming the 30-day rule into an obstacle — rather than an accelerant — to judicial review, and result in irreparable harm to defendants." *Id.* (internal quotation marks and citations omitted). Thus, this Court joins the many others that have called on the BOP to expedite its decisions on applications for compassionate release in light of the threat of COVID-19.

The Court notes that, even if Ms. Roberts had exhausted her administrative remedies, the compassionate release statute does not allow the Court to grant Ms. Roberts what is, in the Court's view, the appropriate relief — *temporary* release from custody. At most, Section 3582(c) allows a court to "*reduce*" a term of imprisonment if the requirements for compassionate release are satisfied. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). By its plain terms, therefore, the statute does not permit the Court "to order [Ms. Roberts] temporarily released from custody until circumstances improve." *United States v. Credidio*, No. 19-CR-111-1 (PAE), ECF No. 66, at 5 (Apr. 2, 2020) (internal quotation marks omitted); *cf. Dillon v. United States*, 560 U.S. 817, 831 (2010) (holding that Section 3582(c)(2), which also authorizes courts to "reduce" a defendant's "term of imprisonment" under certain conditions, only "permits a sentence reduction," not "a resentencing"). Thus, the only way to grant Ms. Roberts the relief she seeks (*i.e.*, release from prison) under Section 3582(c) is to reduce her sentence to time served — in other words, to *permanently* release her. The Court need not decide now whether it would make that choice, but — unless circumstances change for dramatically for the worse — it would be hard pressed to conclude that, whereas the Section 3553(a) factors justified a forty-eight-month sentence only a month ago, the same factors suddenly justify a time-served sentence today. *Cf. Credidio*, ECF No. 62, at 1 (Mar. 30, 2020) (refusing to reduce a sentence to time served pursuant to Section 3582(c) on the ground that "a lengthy term of imprisonment is required for [the defendant] for all the reasons reviewed at sentencing"). The Court does not wish to give Ms. Roberts a windfall; it wishes to temporarily release her until the threat from COVID-19 passes and she can finish her sentence in safety. Unfortunately, Section 3582(c) does not give the Court power to do that.

## FURLOUGH

In part for these reasons, the Court also ordered supplemental briefing on the furlough statute, Section 3622. ECF No. 290. On its face, the furlough statute would seem to be a better fit for the present circumstances, given the concerns described above. In relevant part, it provides as follows:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to —
>
> > (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of —
> >
> > . . .
> >
> > (3) *obtaining medical treatment not otherwise available*;
> >
> > . . . or
> >
> > (6) *engaging in any other significant activity consistent with the public interest . . . .*

18 U.S.C. § 3622(a) (emphases added). Either of the highlighted subsections may well be sufficient to justify Ms. Roberts's temporary release under the circumstances. And the Government has taken the position that such release can be extended beyond the thirty days, ECF No. 291 ("Gov't Supp."), at 7, so the statute would provide a means to release Ms. Roberts until the threat posed by COVID-19 subsides and she could be safely returned to prison to finish her sentence.

The problem is that the decision of whether to grant Ms. Roberts a furlough under Section 3622 is committed to sole discretion of the BOP. As virtually every court to consider the question appears to have held, "[t]he statute could not be clearer as to whom it vests with the

authority to grant temporary release . . . . [It] gives authority over temporary-release decisions 'to the Bureau of Prisons (BOP), not the federal courts.'" *In re Radcliff*, No. 12-1444, 2012 WL 5974172, at *1 (10th Cir. Nov. 28, 2012) (quoting *United States v. Premachandra*, No. 95-2871, 1996 WL 102567, at *1 (8th Cir. Mar. 8, 1996) (per curiam) (unpublished)); *accord McMullen v. Hambrick*, No. 93-5089, 1993 WL 302197, at *1 (6th Cir. Aug. 6, 1993) (unpublished); *United States v. Schaefer*, No. 07-CR-498 (LJL) (S.D.N.Y.), ECF No. 73 (Apr. 6, 2020), at 4; *United States v. Hernandez*, No. 19-CR-834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Clark*, No. CR 10-50015-02 (JLV), 2012 WL 4324910, at *1 (D.S.D. Sept. 20, 2012); *United States v. Padilla*, No. 09-CR-3598 (JB), 2012 WL 2175749, at *3 (D.N.M. May 31, 2012). In short, it is up to the BOP, not this Court, to decide whether to grant Ms. Roberts temporary release pursuant to Section 3622.³

That said, nothing in Section 3622 "prevents this Court from recommending" that BOP exercise its discretion to grant Ms. Roberts temporary release. *Schaefer*, ECF No. 73, at 4. In the absence of further information about Ms. Roberts's medical condition, the Court is not

---

³ That is not say that the BOP's decision is entirely unreviewable. As the Government concedes, a defendant whose furlough request is denied may seek judicial review by way of a petition for habeas corpus or mandamus. *See* Gov't Supp. 7-8; *see also, e.g.*, *Santos v. United States*, No. 12-CV-4836 (DLI), 2013 WL 1952509, at *1 (E.D.N.Y. May 10, 2013) (indicating that a defendant denied a furlough may "seek judicial review by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241"); *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006) (vacating the dismissal of a habeas challenge where the BOP failed to properly consider statutory factors under 18 U.S.C. § 3621). But any such review would be highly limited. *See, e.g.*, *United States v. Cabrera*, No. 06-CR-1165 (JFK), 2017 WL 398384, at *2 (S.D.N.Y. Jan. 27, 2017) (noting that courts "cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy" (quoting *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005)); *cf. Johansson v. Strada*, No. 12-CV-5296 (ARR), 2012 WL 6093534, at *4 (E.D.N.Y. Dec. 7, 2012) ("Not only does the BOP have the authority to designate the place of confinement for federal prisoners, the BOP's discretion in making prisoner classifications is virtually unfettered." (internal quotation marks omitted)). In any event, the issue is not ripe at the moment, as it is not clear that Ms. Roberts has even filed a furlough request with the BOP, let alone that the BOP has denied such relief.

prepared to go that far at this time, but does recommend that the BOP consider her for a furlough. "Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll [of inmates from COVID-19] is to decrease the jail and prison population by releasing as many people as possible." *United States v. Nkanga*, 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020). COVID-19 poses a particularly grave danger to people with weakened immune systems, and there is no question that HIV patients — at least those whose HIV is not well-controlled — are among the most immunocompromised. *See HIV and Opportunistic Infections, Coinfections, and Conditions*, Nat'l Inst. H. (May 28, 2019), aidsinfo.nih.gov/understanding-hiv-aids/fact-sheets/26/86/what-is-an-opportunistic-infection. Thus, for Ms. Roberts, contracting COVID-19 might change her forty-eight-month sentence into a death sentence. The Court acknowledges that the BOP must also consider competing interests — including Ms. Roberts's extensive criminal record and the severity of her crimes — but, in the Court's view, if Ms. Roberts is indeed a high-risk inmate, the scale would tip in favor of release. Notably, that view accords with the Attorney General's direction to "immediately review *all inmates* who have COVID-19 risk factors" to identify "suitable candidates for home confinement." Memorandum from Att'y Gen. William Barr to Dir. of the Bureau of Prisons, at 2 (Apr. 3, 2020), *available at* ECF No. 291-2 (emphasis added). Ms. Roberts may well be a "suitable candidate"; if so, the BOP should grant her a furlough as part of its "profound obligation to protect the health and safety of all inmates." *Id.* at 1.

## CONCLUSION

For the foregoing reasons, Ms. Roberts's motion for compassionate release is denied without prejudice to renewal if the BOP does not act upon her request within thirty days of its receipt. At the same time, the Court recommends that the BOP consider whether to grant Ms.

9

Roberts a temporary release pursuant to the furlough statute. If appropriate, doing so would reduce the threat posed to her and to all inmates detained in the MCC, while also ensuring that she serves the sentence that only one month ago the Court concluded she deserves. To ensure that the BOP learns of the Court's recommendation and treats this matter with the urgency it requires, the Court directs counsel for the Government to promptly serve this Memorandum Opinion and Order on the Warden and Chief Counsel of the MCC.

The Clerk of Court is directed to terminate ECF Nos. 288, 289, and 292.

SO ORDERED.

Dated: April 8, 2020
New York, New York

JESSE M. FURMAN
United States District Judge